l District. School District. Mhm. All right, Mr Pittman. It plays court. When a parent sends their child to school, that parent and the child has an expectation. Indeed, the child has a right that they will not be preyed upon and sexually abused by a teacher. And the administrators will turn a blind eye to that abuse. Initially, could you explain to us why the parents allowed this child to go live with the abusive teacher? Well, Your Honor, there's information that's not in the record where there is, there is a diagnosis of the mother, mental diagnosis of the mother, as well as economic considerations. Mother, who's the plaintiff in this case? I'm sorry? Mother, who's the plaintiff in this case? Yes, Your Honor. There's also information we've, this was contained in the complaint. There were school administrators who encouraged the student to go live with the abuser. In order for the district court to leave this child defenseless and without a remedy, the district court committed several errors, all of which require remand by this court. Initially, in determining the statute of limitation, the district court took what would be considered by most to be plain language in a statute that says that here is a statute of limitation. It's a self-contained statute that expresses what the statute of limitation is. There are some exceptions to it, but it's all contained within the statute. In order to reach the result that there should be a two-year statute as opposed to a five-year statute, the district court essentially struck language from the statute. There's a clause in it that the district court simply struck. That clause, again, when read in context with the statute, would have provided for a five-year statute of limitation for the plaintiffs, but the district court, again . . . But that concept of we can't have district court striking language would have applied to any of the various configurations the Supreme Court discussed in Owens, right? In other words, you've got an intentional tort limitations period extended in another statutory section, or here cross-incorporated, or even if it were embedded directly in. All those are just variations on the same theme that Justice Marshall was concerned to avoid, saying we have to have just a rule that is easy to apply, and the easy rule to apply is always default to the residual or general clause. That's how I read Owens, and let me turn that into a question for you. Is there any circuit that hasn't read it that way? What's your best, or do you have any circuit that has still allowed courts to look for intentional torts, the extended times? Do you know of any circuit that's interpreted post-Owens to protect that? No, Your Honor. Of course, this circuit has not ruled on that. I know, but has any other circuit, given the argument you're making, in any of the configurations, standalone statute, incorporated statute, or embedded in? Well, there's no court that has allowed a district court to strike language from a statute in applying Owens. I know you're using that phrase, but that's exactly what the Supreme Court arguably did in Owens, and that was a unanimous decision. They said you can disregard otherwise applicable statutes because we're coming up with a practical rule. Well, you can disregard other statutes, but you can't disregard the borrowing statute. I know, but I . . . Well, okay, go ahead. What the district court did, it disregarded the other statutes, and it disregarded the borrowing statute. That's what it cannot do. The point in Owens was certainty. Owens had a choice between several different statutes. New York had several different ones, and the Owens court, the primary hole in there, Your Honor, as I understand it, is that they wanted uniformity with no risk of confusion or unpredictability. That's what exists here. If the court had applied 16-0-3 . . . We were on the wrong side of the split. The Supreme Court reversed us, saying we'd applied the intentional tort longer period. The Supreme Court said no. That's very similar to what you're asking us to do again now. No. Well, what the Supreme Court said is that we want uniformity. We want a, whether it's a plaintiff or defendant, we want that party to be directed. Wouldn't the proposition that you're arguing mean that you look to every state, and then you find there's all sorts of different personal injuries, and if you find one personal injury that's more particular than another personal injury under the general personal injury statute, then you would use that, in which case, in that particular state, when you have claims brought under the statute, they would all differ depending on which state had a more particularized personal injury that you would say fit your injury. So, wouldn't that defeat the idea of having some generalized statute where it's uniform across the board? No, Your Honor. I think the principle, again, in Owens is that each state should have one, what they call a general personal injury statute. Now, states have several. There are some states that have one or two. There are some states that have six or seven, but the court said that the plaintiff and the defendant should find that general personal injury statute in every state, and that's the statute that should be applied. So, that general personal injury statute for Texas is 16-003. It's different for different states, but in every state, there's just one that is considered a general personal injury statute, and that's the statute that each state should apply in a Section 1983 case or anything else that involves a personal injury. So, the court, again, misapplied Owens. Owens never stood for the proposition that the statute limitation should be two years. In fact, Owens did not concern himself with whether it was two years, five years, or 20 years. It just said, we want to ensure that everybody knows how to get to the date that the statute provides for. The district court also, with regard to the accrual date for the plaintiff's claims against the school defendant, the district court, again, misapplied the calculation of the accrual date. In doing so, the district court looked only at the sexual harassment by the plaintiff's accrual date had begun. If you look through the district court's opinion, the district court kept focusing on when the victim found out that she was abused by the teacher. The district court did not, or rather, they glossed over the distinction between the claim that the plaintiffs were making against the school district versus the claim that was being made against the sex abuser. As a matter of fact, if you look at the court's order on pages 448 and 452, the focus was simply on when the plaintiff knew she was being abused by the abuser, and that's how they went about calculating when the accrual date started, as opposed to where the plaintiff's claim against the HISD defendants is not that she was sexually abused by an HISD administrator, but instead that the HISD defendants created circumstances, most of which she did not know about. They created policies. They also had a deliberate indifference to what Ms. White was going through. These policies, I mean, be as specific as you can, the policies. When in your brief, you refer to a same bed policy. Is that in the complaint also? Yes, Your Honor. That specific allegation that the school had a same bed policy? They allowed them to share the same bed? They allowed it, but you used the expression policy. Well, they had a... That's something you discovered as a result of the criminal arrest and conviction, that this is an established policy. Well, that's something, all of what was starting to reveal itself started coming out during the criminal investigation. And that's the most ironic thing, Your Honor, is that the appellees are during the time the criminal investigation was going on, during the time when all the records were in the hands of the district attorney. That's the point at which they say that... Your complaint is structured around, as of the time of the assaults, knowledge existed and you're saying that other parents, like in paragraph 64 of the complaint, made complaints and were told we'll take care of it and they didn't. So that seems to be knowledge of a blind eye. Not knowledge by the plaintiffs. There were other parents who reported their concerns to the school administrators. That's where the deliberate indifference comes in. The plaintiff was unaware that these other parents were complaining. As a matter of fact, as the complaint alleges, the other parents and students alienated themselves from the plaintiff, from the plaintiff and her mother. So they alienated themselves. So there was no sharing of information. So even if these other parents knew about it, there was no sharing of information. When the plaintiff tried to get that information, Your Honor, they were thwarted by... First, the HISD prevented them from getting that information. Then they were prevented from getting that information from the district attorney. So at no point were they able to get that information about some of these policies. Again, when the criminal investigation started to take place, that's when the plaintiff started to see information about the policies of the sharing of beds, which there was one policy as it related to females that didn't apply to males. So there was discriminatory policies that were discriminatory on their face. But again, the plaintiffs did not start to discover this until long after the criminal investigation. In some instances, it was over a year after when the district attorney finally decided to turn over the records. But during the criminal investigation, the district attorney had requested from the state attorney general whether they can withhold the records. So the plaintiffs were not able to get the records even if they had tried. But all this time, they knew that A.W. was living with the teacher and they knew the school knew that she was living with the teacher. So why isn't that sufficient for the accrual time to begin with respect to knowledge? Well, Your Honor, I would venture to argue that not every adult who has a child living with them is going to sexually abuse them. These parents were given an assurance by the teacher, the teacher's perfectly okay for her to live with the teacher. So the school administrators, including the principals, the assistant principal, they were all aware of this relationship. Matter of fact, most of what happened was in an open view. Every day, the teacher would take the student off campus for lunches. They'd go shopping. This was in the open view of all the administrators. There was touching where the dance instructor would touch the student. This was all in the open view of administrators. Now, even with the parents' complaints, the other parents who complained, the district was telling these other parents that they were going to investigate it, but they never did. There was that deliberate indifference. And we've cited several cases where when you've got these discussions and school board meetings about activities like this, that is sufficient to show that they have actual notice of the sexual harassment that's going on. So if the, and again, the criminal investigation took place between March and October, 2013. And again, that's all in the record, but that's when the records were in the hands of the criminal authorities. And that's when the plaintiffs were not able to get those records. But again, the record shows that they initially concealed the records from her family. That's in the record on page 30, paragraph 112. They concealed it from Texas Family Services. That's in the record on page 25, paragraph 94. They held it from the investigators. As a matter of fact, there's still information that is still coming in, in the state court case. But again, and all of this was brought to the attention of the plaintiffs on page 12 to 14. Is this brought to the attention in connection with your accrual argument or in connection with your tolling arguments? Both. Both. It's on. Would you just, with the last minute you've got, give us your best case on dating the accrual from not the date of the harassment or her reaching an age of majority, but instead starting it from after the criminal case conviction evidence came to light? What's your best case for that proposition? Correct, Your Honor. What is your best case? There's several, Your Honor. They're cited in our reply brief, pages 19 and 20, but there's the case of Pinnaud versus County of Suffolk. There's Branch versus Guilderland. There's Houston versus Cotter. There's DeVito versus Village of Valley Stream. There's Temple versus Items. Houston, they're Piotrowski versus City of Houston. They all stand for the proposition that the accrual doesn't come until after the plaintiff becomes aware that there was a policy of the municipality that caused a violation of that plaintiff's rights. All right. Thank you, sir. You've saved some time for rebuttal. Ms. Brown. May it please the court. We will address the accrual argument first and then the Title IX and immunity questions presented if there's any time remaining. The district court held that the accrual occurred before the student turned 18 and before she graduated based on the student's admissions in the pleading. And one of the failings in the opponent's brief is their belief that the standard is actual knowledge. It is not actual knowledge under the precedence of the circuit. It is an objective, reasonable person standard and what a reasonable person would have known or understood at the time. And based on the allegations and this complaint, based on their own pleadings, what we see is Mrs. White alleges that she herself, after allowing her child to move in with this teacher, she alleges that she told unnamed school officials that she had concerns about an inappropriate relationship, an improper relationship between A.W. and the teacher and that her concerns went unaddressed and that thereafter her daughter's grades went down and thereafter she was getting medical bills because now her daughter was having medical problems in her gynecological area. And they allege that unnamed school people encouraged the daughter, to live with the teachers. These were facts within the plaintiff's knowledge. If this really happened, this is information that was in their possession from the moment they filed the lawsuit that should have been in the pleading if they're saying particular school people told them, encouraged them to live with the teacher. And how is this any different from the Fifth Circuit case, Bay City, Longoria, where the home purchaser said, the city official said, you're buying a home and there's no flood issues. And then the home floods. The Fifth Circuit said that first flood, that was enough for you to start exercising some reasonable diligence. And in this circuit, it is constructive knowledge, not actual knowledge. When we look at their brief, in the reply brief, they say they were not fully aware of deliberate indifference. We weren't fully aware of the customs, no accrual until it was clear what the policies were. That's not the standard. That's not the standard. Under Petrosky, Newman, Jensen, Henderson is directly on point. Section 1983 case against a school district and a school principal. The plaintiffs have stated that that case is different because it didn't involve deliberate indifference claims. Footnote two in the Henderson case. Same claims, deliberate indifference, constitutional, bodily integrity, school district, fraudulently concealed the knowledge. Is that Henderson case the same one where we didn't answer the statute of limitations? Correct, Your Honor. So it's the same Henderson decision? Yes, Your Honor. But in footnote two, it's clear. It's the same deliberate indifference type of same exact constitutional claims, multiple victims. So an even more egregious fact pattern cited Petrosky. And in that case, they did not apply AW's special accrual rule, even though there was this fraudulent concealment claim. That case, they also decided, footnote eight. There's no need to decide the exact moment of accrual when it was clear based on those pleadings that the injury occurred when the children were under 18. So we don't even need to decide the exact date the way the appellants here claim. You have to decide the exact date. If there's tolling anyway, then it's going to be triggered from the moment you turn 18. And under Petrosky and Henderson and Newman, this court's precedent. We don't have a special accrual rule for section 1983 claims. It just doesn't exist. And that deliberate indifference is not the injury. There's not a case that says that. And they also claim in the reply brief that accrual can depend on the class of defendant. That's not the law. The injury is the sexual assault. What Petrosky does say is that looking at the injury, we have to identify the injury first, and then looking at that injury, did that injured person know or should they have known, with the exercise of reasonable diligence, of the link between that injury and whatever the defendant did. So it's not like section 1983 has special rules. We have these accrual rules under federal law that are fairly standard. We're just applying them to a particular type of claim. Petrosky is a very unique sort of case where the city police officers were involved with a third-party hitman. Very unusual. And there the court said, because it was such an unusual fact pattern, that until this testimony came out in an unrelated case, that this woman who had been shot and paralyzed by this hitman, that there was no way for her to know of this affirmative link, which is the court's language, the affirmative link between this hitman outside of the police department and these police officers, very different from what we have in the world, unfortunately, of cases involving sexual abusers. Unfortunately, as the court knows, we have many cases involving churches and youth organizations, and the prevailing view is that if the victim knows the identity of the abuser and the abuser's employer, and the youth became acquainted with the abuser in the context of that employment, that is sufficient for accrual purposes. And that's what the district court held here based on that prevailing view. This is common sense. This is a practical inquiry, if you will, that given the church scandals in the news, Penn State, just what people are aware of, if you're a parent and your child is abused, there are certain reasonable things objectively you're going to do, whether it's you start making requests for information from the parents, you talk to other parents, you start that research. Here, although they allege they were diligent in 2013, what we don't see anywhere in the record, no requests for information in 2011, no requests in 2012, no diligence, no inquiries. All they allege is that we lived in fear for two years. The other big issue is applying Owens. And so if you were going to reach that also. Owens. I'll just tell you my difficulty there is that in Owens, the court unanimously chose to apply the residual statute, which was a longer statute. Here, by applying the residual or general provision, it will give less time. So, right, when the court, the Second Circuit decision that's reversed by the Supreme Court is noticing that and the Second Circuit points out the importance of giving plaintiffs a remedial option in 1983. So I guess my question is, is Owens so controlling in this situation where it's a shorter period instead of a longer period? I think it is. And I think that's what we've seen throughout the circuits. In addition to the 10th, 7th, and 9th circuits, which we cited, where I think by and large, the sexual assault statute limitations tend to be longer than the general personal. Do you agree that's a question that the Supreme Court left open in Owens? I don't believe so. Because when we look, there's a very long footnote in Owens where they acknowledge the proliferation of specialized statute limitations that the state legislatures have created. And they noted a number of statute of limitations. True, they did. But in the final footnote citing Justice, then Justice Rehnquist, you remember the court specifically said, we're not focused here, interestingly, because we're applying the longer period on the predicament of maybe reducing the time for a 1983 litigant. So to me, that leaves directly open the question that's presented here. Do you remember that footnote? Yes. And yet I'm also guided by Owens and Wilson's focus on this concept of one simple, broad characterization of the section 1983 claim. Certainty and uniformity. And, but then I. My question to you then, what would be too little time? Or could you imagine no too little time? What would be too little time? I think Congress has created a gap by not, by choosing not to create a statute of limitations for section 1983. That would certainly solve a lot of this. They have left it to the 50 states to decide whether it's one year or 10. And so unfortunately that they have, they have made that a legislative judgment on what is an appropriate time. So even now among the 50 states, when I'm reading section 1983 opinions, I don't know. Excessive force is two years. Do you know of any states where the general residual clause is less than two? No, not off the top of my head. Related question. Have you seen post Owens case law where it is this borrowing incorporating language? So arguably the residual clause itself contains an alternative. That's I think his primary effort to distinguish Owens is that's unlike the three circuits you cited. You just think that's a distinction without a difference? I do because when I look at 16.003, I see a general rule, which is the goal is they want one simple broad characterization that's easy to apply. And when you look at that language, it takes me into another provision. But you're on your theory. It wouldn't even matter if the other provision were built into 1603. As long as there's a residual provision, even in the same section, we would default to that, right? Yes, because when you look at the policy reasons in Owens and Wilson, we have a problem even in this case. Some of their claims are discrimination and equal protection. That's not a sexual assault claim. The 16.0045, that's a sexual assault provision for, you know, it's very, very limited the way it's been applied. So we're going to have to have, go back to the old days of the case by case analysis where the district court for each of the claims in this pleading, well, is the discrimination claim, is that going to be 003? Is it going to be 0045? And then we're going to have the artful pleading that was of great concern in Owens and Wilson, and we're going to be where we were, which led to the Owens case, I think in the very first instance. We're going to have more debates as we see clever pleading, particularly with a statute like Title IX, which is an evolving statute, and we're going to see people pleading things so that it looks more like a sexual assault, even if it's just sexual harassment. The court had multiple different grounds to give the favorable ruling, and one of them was that the pleadings weren't sufficient enough. Are you pressing that or do you think... Absolutely. Particularly, yes, Your Honor. I think Iqbal is, according to the Fifth Circuit, applicable to the Section 1983 claims, the Title IX claims, and certainly with respect to the qualified immunity claims against the individual defendants. And with respect to the Title IX and the Section 1983 claims, there's something very critical that links both of those, where the specificity of the pleading is so essential, and Iqbal tells us that we, that judges must use, you know, common sense and judicial experience in looking at the plausibility of what the plaintiffs are saying. These opponents are saying, these six school officials have the same knowledge acquired at the same time. All six people, and it's kind of like Iqbal, where they sued prison guards, wardens, the attorney general and the FBI director, all levels of government. Humboldt ISD has 40,000 students, and you've sued the superintendent and a counselor and everyone in between, and you're saying that Ms. Feenstra, who was at Ms. White's house late at night, how did Dr. Sconzo know that? How did Dr. Sconzo know that this woman was going to your church and sleeping in a bed with your daughter? How did the superintendent of schools know that? They have, just as a matter of allegation, they allege what he just said, which is that parents complained and were told. But they haven't alleged that, Your Honor. They have alleged school officials had knowledge, and under... I mean, in my memory, in the complaints, paragraph 64, they allege just that, that parents complained and were then told by school officials were looking into it. There is a paragraph which alleges that Mrs. White made complaints to unnamed school officials, unnamed complaints, unidentified subject matter. That is not enough for qualified immunity purposes. Under Doe versus, excuse me, my mouth, Doe versus Taylor, the en banc Fifth Circuit decision regarding educator immunity for sexual harassment. You have to show as a plaintiff that each individual school official who was a supervisor had actual knowledge of specific facts of abuse plainly, and that's the word in the opinion, plainly pointing to actual knowledge of abuse of that child and was deliberately indifferent. But you're, you're, you're accepting the actual knowledge of a substantial risk standard, correct? You're not disputing that, right? But the only circuit that says actual knowledge of an abuse is the Fifth Circuit. That's not an argument you're making to us. I'm just quoting from, from Doe versus Taylor, Your Honor. It says... But do you accept that the standard in this circuit, I'm thinking... Under Title IX, Your Honor. Yes, it does say a substantial risk under Title IX. For purposes of the immunity standard, they still have to establish on an the level of specificity needed to show that, that, that would place each school official at a place in time where they would have obtained that type of knowledge. There's a case we cited, Whitley versus Hanna from the Fifth Circuit, very analogous context, where the plaintiff alleged that these particular individuals, that they saw clearly inappropriate behavior and it was sexual. And the court said that wasn't enough to negate immunity. And we have this collective allegation over and over, the school officials, all six of them, had the same knowledge that they acquired at the same time over and over again. Under the court's precedence, that's insufficient to pierce their immunity. Particularly given the various circumstances under which they're claiming it was acquired. Dance recitals, hotel trips. Again, when was the superintendent of schools at these events? When would he have had the opportunity? And the counselor, she was not a supervisor. There's no facts linking her to any of those supervisory responsibilities. Also, when the mother alleges that she reported improper behavior, which is a conclusory assertion under Iqbal, improper teacher behavior, that could be improper religious behavior. It could be improper drug behavior. It could be she's a hard disciplinarian. It could be anything. When a teacher is being inappropriate, that it's not necessarily sexual. And under Iqbal, simply alleging that facts that are consistent with liability, that's not enough, according to the court, to nudge you over the line into stating the claim that's plausible on its face. And that's the standard that applies to all of the claims. And so Judge Lake, I think very thoroughly and very meticulously went through each of the allegations in establishing why, at the end of the day, that they were vague. And regarding the records, again, the plaintiffs on their own, they chose not to go to the police until many years after the fact. And then, only then, did they begin to ask for records, which by then were in the hands of the police. And so they did not have access. And in the Wallace case, the Supreme Court that the plaintiffs have cited, that the Supreme Court does disfavor rules that place control of the statute of limitation and accrual solely in the hands of the plaintiff. And here, at some point, much earlier, when the child was abused and they realized that, they could have sought legal counsel to obtain advice. We urge the court to affirm in all respects. Thank you. Thank you, Ms. Brown. Mr. Pittman, you have some rebuttal time. May I please report? Your Honor, first of all, Owens actually describes a statute that has certain exceptions. In Owens, on page 246, it describes a statute as something, as a personal injury statute with certain specific exceptions. So Owens even recognizes that the statute, the borrowing statute, can have certain exceptions to it. There is simply nothing in Owens that prescribes. And the court certainly could have done this. The court could have said that, through Owens, could have said that we're going to have a two-year statute of limitation for sexual assault or for 1983 or whatever else they wanted to call it. They didn't. They referred to the borrowing statute that would be determined by state. Some states have a longer personal injury statute. But it's up to that state statute. And there's nothing in Owens that said that a court can disregard that. With respect to the notice, the record is very clear, Your Honor, that all of the defendants had individualized assessment of the claims that Ms. White is making. Paragraphs 55 through 69, 72 through 77, 83 through 95, tell the defendants, again, for purposes of the motion to dismiss, it gives them notice of the claims against them and the grounds on which the claims are made. The complaint is 36 pages. If you follow their line of argument, then the complaint would be eight times 36 if you're going to allege the same complaints against the same defendants. This was a school where the administrator's office were in a small area. These were assistant principals and counselors. They were all located in this area. They're all aware of it. Because this case was dismissed prematurely, the plaintiffs were not permitted the opportunity to develop additional evidence regarding the state affairs at the school. As the court knows, inferences of knowledge and deliberate indifference require a fact finder to actually examine and weigh the evidence of what was happening at the school. Despite the allegation that the administrators were told about the plaintiffs were prevented from getting these records. And again, the purpose of a trial is to permit the fact finder to draw inferences from evidence that's actually developed during discovery. For purposes of the 12B6, the complaint alleges specific facts that each of the defendants had about what was actually happening to Ms. White at the time. In addition, appellant cited to Piotrowski versus City of Houston, but did not cite specific language in that case. That case says that, quote, when a defendant controls the facts surrounding causation such that a reasonable person could not obtain the information, even with a diligent investigation, a cause of action accrues, but the statute of limitation is told. Again, we're talking about a situation where the family, despite her circumstances, the mother tried to obtain information from the school about what they were doing, an investigation about what she didn't know was a sexual relationship. She just thought the lady is spending too much time with my daughter. So she didn't know it was a sexual relationship. The other parents knew or may have known that it was a sexual relationship, but certainly the observations that the administrators were making from the window of the administration office, when they're seeing the teacher walk outside with an arm around the student or going to lunch every single day or knowing that the student has moved in with the lady and not conducting any type of investigation whatsoever. It's because, Your Honor, and that's the, I would submit to the court that that's the policy or the kind of message that the court should not send to school administrators because basically what, following their logic, a school administrator would deliberately conceal the information and prevent a plaintiff from getting it and prevent a lawsuit against the school district. If a plaintiff can't discover it, the plaintiff could never sue the school. So if you've got policies that the school is implementing that the student doesn't know about, but the other administrators know about it, the student didn't know that this was a policy that applied to female students and female teachers, they could share a bed, but a male and a male couldn't share a bed or a male and a female couldn't share a bed. This is a 16, 17 year old student. The student was not aware of what the policies were. The student could not discover the policies because again, as we've alleged in the complaint, when she tried to get them from the school, they prevented it. When she tried to get them from the district attorney, it prevented it. Thank you, Your Honor. Thank you, sir. We have your argument. I will take an approximate 10 minute recess and we'll take up the next two cases.